**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **GOVERNMENT PAYMENT SERVICE, INC., d/b/a GOVPAYNET,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 12 C 1946** |
| **LEXISNEXIS VITALCHEK NETWORK, INC.,** | ) ) ) | |
| **Defendant.** | ) ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Government Payment Service, Inc., d/b/a GovPayNet (GPN), has sued

LexisNexis VitalChek Network, Inc. (VitalChek). Cook County moved to intervene on

the defense side of the case, and the Court granted the motion.

GPN asserts a claim for false advertising under the Lanham Act as well as state

law claims. VitalChek has moved to dismiss GPN's claims, and Cook County has

moved to stay the suit pending resolution of related suits in state court. For the reasons

stated below, the Court grants VitalChek's motion to dismiss and terminates as moot

Cook County's motion.

### Background

The Court accepts the allegations in plaintiff's complaint as true for purposes of

resolving the motions to dismiss. *See Hallinan v. Fraternal Order of Police of Chi.*

*Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).

A.    **GPN's business with Cook County**

GPN is a credit card processor and provider of bail bond services.  As a credit card processor, it manages credit card and debit card transactions between consumers and merchants by processing the consumer's credit or debit card information, working with a bank to gain approval of the transaction, and conveying the funds from the cardholder's account to the merchant.  Generally, a card processor charges merchants a fee for the services that it provides.  Some government entities that accept credit cards, however, insist on terms requiring card processors to charge a convenience fee directly to the consumer so that the government entity is not charged a fee.

As a credit card processor, GPN is required to comply with rules established by the credit card issuers and associations.  The most demanding rules are those created by Visa, which is the most commonly used brand of credit card in the United States.  Visa has strict rules governing convenience fees.  In particular, GPN claims, Visa's rules generally require any convenience fee to be a fixed sum rather than an amount that depends on the dollar value of the transaction.  Visa's rules also generally forbid any third-party processor from charging convenience fees.  According to GPN, Visa's rules permit only a merchant that actually provides a good or service to the credit card holder to charge a convenience fee.  Each of these rules, however, has some exceptions.

Since 2005, GPN has processed some credit and debit card transactions for Cook County.  Specifically, GPN has processed bail bond payments for the Clerk of the Circuit Court of Cook County and has processed tax payments and other transactions for the Cook County Department of Revenue.  As part of its bail bond processing, GPN

2

also claims to provide other services related to the bail bond process.  It describes

these services as follows:

> [C]ompletion and processing of bail related reports; validation of
> government agency data; discussions with the governmental entity staff;
> provision of technological services designed and developed to expedite
> bail payments; suggested process improvements; training and support by
> GovPayNet field staff; the handling of all chargebacks and card holder
> contacts regarding payment status and issues; and following up with
> correctional facility staff to ensure that all requirements related to prisoner
> release have been met.

1st Am. Compl. ¶ 20.

Cook County imposed a requirement that credit card processing not cost the

County any money, so GPN charged cardholders directly for the services it performed

for the County.  Initially, GPN charged a convenience fee equal to a certain percentage

of the transaction.  In response to a rule compliance investigation by Visa, however,

GPN changed its practices in 2010.  It began charging fixed fees for all transactions it

handled for Cook County's Department of Revenue and similar government entities.

GPN continued charging percentage fees on bail bond transactions.

Visa initially took the position that GPN's percentage convenience fees violated

its rules for two reasons.  First, Visa believed that GPN was only a third party processor

and thus could not properly charge any convenience fees at all.  Second, Visa thought

that GPN's percentage convenience fees were improper because Visa's rules allowed

only fixed convenience fees.  Eventually, however, GPN convinced Visa that it was a

merchant providing bail bond services and that it could therefore appropriately charge a

percentage fee for those services when processing bail bond payments for Cook

County.  Visa also gave GPN a merchant category code (MCC) appropriate for a

3

company in the business of handling bail and bond payments.  GPN claims that MCCs reflect the primary business of the merchant.

**B.    Cook County's bid process**

Changes in Illinois law obligated Cook County to begin accepting credit card payments for real estate taxes by the beginning of 2012.  As a result, in 2011 Cook County sought bids from credit card processors to process credit card payments made to the County Treasurer, Circuit Clerk, and Department of Revenue.  GPN already handled credit card transactions for the Circuit Clerk and Department of Revenue, but the County wanted a single processor for all credit card transactions.

Cook County issued a request for quotes (RFQ) that established the bid process for credit card processors.  In the first stage, interested companies could submit proposals to the County, and the County would judge if they were qualified to offer the services the County needed.  In the second stage, the qualified companies could specify the fees that they would charge to process transactions.  Cook County made clear that it would pay nothing for the credit card services and that the winning bidder would have to charge cardholders directly.  The RFQ and its addenda contained other requirements.  All bidders had to agree to accept all major credit cards, obey the card associations' rules, and handle chargebacks, which are essentially refunds to cardholders.

After the first stage of the bidding process, the County found four companies qualified, including GPN and VitalChek.  The County invited each of those companies to submit a bid indicating the amount that it would charge customers to process credit card transactions.  The County made clear that the winning bidder would be the

4

company that submitted the lowest percentage convenience fee.  No provisions were made for charging a fixed convenience fee.

VitalChek submitted a bid indicating that it would charge a 2.24% convenience fee.  Its bid included, however, a footnote stating that Visa regulations did not permit the charging of percentage convenience fees in cases that did not involve tax payments and that in some face-to-face transactions Visa did not permit any convenience fees at all.  VitalChek asked if it could submit proposed fixed convenience fees and also asked whether the County was willing to forego acceptance of Visa cards when Visa rules would not allow a processor to charge convenience fees.

GPN also submitted a bid.  Its bid was more complicated, to account for the complexity of Visa rules, but it included a 7% service fee for bail bond transactions, a combination of fixed fees and percentage fees for tax transactions, and fixed fees for other transactions.  GPN asserts that its bid fully complied with Visa's rules.  GPN informed the County that it did not believe that any of the other bidders could charge percentage convenience fees for payments to the County, except with regard to tax payments.  GPN also described the benefits that the County would receive from bail bond services that GPN would provide in addition to credit card processing, claiming that these services would save the County substantial amounts of money.

In September 2011, Cook County's Chief Purchasing Officer, Maria Lourdes Coss, recommended to the Cook County Board that it award the credit card processing contract to VitalChek.  The Board did not immediately approve the recommendation, and it referred the matter to a committee.  One county commissioner raised several questions about VitalChek, including whether the company would be able to charge

5

percentage fees and still comply with Visa's and MasterCard's rules. Nancy Horodecki, a Cook County procurement employee, contacted Jeffrey Piefke, VitalChek's Vice President, to ask if VitalChek was certified to process bail bond payments. GPN claims that Piefke knew there was no special certification for processing bail bond payments but that he nonetheless sent Horodecki documents to indicate that VitalChek was certified under Payment Card Industry Data Security Standards (PCI DSS) and falsely suggested that this certification related to bail bond payment processing. In fact, PCI DSS certification means only that VitalChek met certain standards for protecting cardholder information; it is unrelated to bail bond payment processing.

In October 2011, Cook County asked the four companies to submit new bids. Specifically, the County requested more detailed bids and required the companies to provide both a percentage rate and a schedule of fixed fees. The percentage rate would be used when permitted by the credit card associations, such as for tax transactions. That same percentage fee would also be used for "[p]ayments to post bail where the Contractor is required to be the merchant." 1st Am. Compl., Ex. 6 at 49. The fixed fee schedule to be submitted by the bidding companies would be used when the credit card associations did not allow percentage fees. The bid request made clear that the County would award the contract solely on the basis of the percentage fee bid. The fixed fee schedule submitted by the winning bidder would bind the bidder but would not be a basis for determining the low bid. In response to a question from one of the bidders, the County stated that to be eligible, a bidder had to be a merchant for bail bond transactions and that the winning bidder had to accept Visa cards for processing bail bond payments and could charge only a percentage fee on those transactions.

6

VitalChek submitted a bid in which it proposed to charge a percentage rate of 2.13%. It also submitted a fixed fee schedule. It included a limitation for both its percentage rate and its fee schedule in which it stated that "[VitalChek] will charge credit card consumers no more than the listed rate/fee for credit card transactions processed. [VitalChek] reserves the right to not process credit card transactions where credit card regulations do not allow the credit card consumer to be charged a convenience fee of any kind." Def. Ex. 5; *see* 1st Am. Compl. ¶ 69.[1]

GPN claims that by submitting a bid, VitalChek implicitly represented that it was a merchant providing bail bond services and that it could charge a percentage fee on bail bond transactions without violating Visa's rules. GPN asserts that neither of these representations is true. Further, in December 2011, Piefke told Cook County in a letter that VitalChek could act as a "merchant of record" for the County when processing credit card payments. 1st Am. Compl., Ex. 13. According to GPN, Piefke's statement deceptively indicated to Cook County that VitalChek was a merchant with regard to bail bond processing and that it could charge bail bond customers a percentage fee. Finally, in January 2012, Piefke e-mailed additional PCI DSS certification documents to Cook County procurement employees. GPN asserts that this amounted to another attempt to mislead the County into believing that this certification meant that VitalChek was a merchant with regard to bail bond payment processing.

---

[1] The Court considers the rebid submitted by VitalChek in resolving the motion to dismiss, even though it is a defense exhibit not attached to GPN's complaint, because GPN cites to and quotes from the rebid in its complaint. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (in resolving a motion to dismiss, court can consider documents referred to in complaint, even if they are not attached to the complaint).

In February 2012, the Cook County Board awarded the credit card processing contract to VitalChek. GPN asserts that by June 22, 2012, VitalChek will take over the credit card processing functions that GPN has previously provide for the County.

## Discussion

A plaintiff "has stated a claim only if it has alleged enough facts to render the claim facially plausible, not just conceivable." *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010). "When analyzing the sufficiency of a complaint, [the Court] construe[s] it in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in the nonmoving party's favor." *Id.* "Where [plaintiff's] allegations are contradicted by written exhibits that [plaintiff] attached to [the] complaint, however, the exhibits trump the allegations." *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010).

GPN asserts four claims against VitalChek: (1) false advertising under the Lanham Act; (2) an Illinois common law claim of tortious interference with a prospective advantage; (3) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA); (4) violation of the Illinois Uniform Deceptive Trade Practices Act (DTPA). VitalChek contends, among other arguments, that the conduct alleged by GPN does not implicate the Lanham Act and that it did not make any false statements or, if it did, they were not false statements of fact.

## A.      Lanham Act claim

"Section 43(a)(1)(B) of the Lanham Act . . . forbids the use of any false or misleading description of fact, or false or misleading representation of fact, which in

Case: 1:12-cv-01946 Document #: 72 Filed: 05/29/12 Page 9 of 19 PageID #:1068


commercial advertising or promotion, misrepresents the nature, characteristics, or qualities of the seller's or another person's goods." *Schering-Plough Healthcare Prods. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 503 (7th Cir. 2009) (brackets and ellipses in original omitted). VitalChek argues that the alleged false statements it made in this case did not amount to commercial advertising or promotion.

The Seventh Circuit has stated that the term commercial advertising and promotion, as used in the Lanham Act, refers to communications with anonymous recipients and does not include face-to-face communication. *First Health Group Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803–04 (7th Cir. 2001) (suggesting that statements made by defendant's executives while negotiating a contract, as well as statements in the contract itself, are not commercial advertising and promotion). The Seventh Circuit has also stated that letters sent to current customers do not amount to commercial advertising and promotion. *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003); *see McDavid Knee Guard, Inc. v. Nike USA, Inc.*, No. 08 C 6584, 2010 WL 3000178, at *5 (N.D. Ill. July 28, 2010) (personal statements made to customers who already had a preexisting relationship with defendant were not commercial advertising or promotion).

The false statements that GPN contends VitalChek made were all made to Cook County and its employees in response to Cook County's solicitation of bids for credit card payment processing. VitalChek's statements are not commercial advertising or promotion, because they were not made to anonymous recipients. Accordingly, the Court dismisses GPN's Lanham Act claim.

GPN cites several cases from other circuits reaching conclusions different from those in *First Health* and *ISI Int'l*, but the Court is bound by those decisions. GPN also cites three cases from district courts within the Seventh Circuit to argue that its Lanham Act claim is legally sufficient. One of them, *Johnson Controls, Inc. v. Exide Corp.*, 152 F. Supp. 2d 1075 (N.D. Ill. 2001), predates *First Health* and thus does not reflect how courts should apply *First Health* and *ISI Int'l*. In another, *Chicago Consulting Actuaries, LLC v. Scrol*, No. 05 C 1320, 2005 WL 819555 (N.D. Ill. Apr. 6, 2005), the court concluded that "personal sales calls" and "person-to-person promotional encounters" were not commercial advertising and promotion. *Id.* at *3. VitalChek's alleged statements are similar. Its e-mails, letters, personal contact, and sealed bid were sent in response to Cook County's requests and questions and do not amount to commercial advertising and promotion. Finally, in *Derby Indus., Inc. v. Chestnut Ridge Foam, Inc.*, 202 F. Supp. 2d 818 (N.D. Ind. 2002), the court decided that a video sent to seven potential clients of the defendant, five of which were not defendant's customers before or after the video was sent, amounted to commercial advertising and promotion. *Id.* at 822–23. The situation in this case is distinguishable. VitalChek did not make unsolicited statements to numerous potential clients with which it had no relationship. Instead, VitalChek made the allegedly false statements only to Cook County, after the County requested bids for credit card processing services.

**B.     False statements**

VitalChek contends that it did not make any false statements to Cook County and that all of GPN's state law claims, which the parties agree are premised on the

existence of false statements of fact, are therefore deficient. *See Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 671 (7th Cir. 2001) (ICFA claim requires misrepresentation or concealment of a material fact); 815 ILCS 510/2 (DTPA requires deceptive trade practice that creates "a likelihood of confusion or misunderstanding")*; Soderlund Bros. v. Carrier Corp.*, 278 Ill. App. 3d 606, 615–16, 663 N.E.2d 1, 8 (1995) (competitor cannot be liable for intentional interference with prospective advantage because it is privileged to compete, unless competition involved wrongful means such as fraud or deception).

GPN asserts in its amended complaint that VitalChek made several misstatements to Cook County. Principally, GPN claims that VitalChek submitted its rebid to the County and by doing so implied that it could comply with the requirements of the County's contract, it could comply with the Visa rules, and it could charge a percentage convenience fee. GPN contends that all of these representations were false. In addition, GPN states that VitalChek made several other misrepresentations to convince the County that it could comply with Visa rules and charge a percentage fee to customers. According to GPN, VitalChek provided PCI DSS certification documents to Cook County, falsely representing that the documents involved being certified as a merchant for processing bail bonds payments, and that VitalChek told the County that it could serve as a merchant of record, even though that term is unrelated to being a merchant for bail bond payments.

GPN's central claim is that unlike GPN, VitalChek is not a merchant offering bail bond services and thus cannot charge a percentage convenience fee to bail bond customers. VitalChek argues that even if it must offer the exact bail bond services that

GPN offers in order to be permitted to charge a percentage convenience fee, it can do so. VitalChek contends that there is no Visa rule, nor is there any provision of the bid that it submitted to Cook County, that would prevent it from offering the services that GPN currently provides, which allow it to charge a service fee. Accordingly, even if VitalChek does not offer those services currently in other locations (which GPN suggests but does not expressly allege in its complaint), it can offer bail bond services once it begins handling Cook County's credit card processing and can charge a percentage service fee for bail bond payment processing in the same way that GPN currently does.

GPN does not dispute that VitalChek could offer the same services that GPN now offers, even if VitalChek is not currently offering those services anywhere. As GPN states in its amended complaint, there is no special certification required of a merchant before it can act as a merchant in bail bond transactions. 1st Am. Compl. ¶ 56. Although GPN asserts that Visa has assigned it a merchant category code (MCC) reflecting that it provides bail and bond payments, GPN does not contend that only a company with that MCC can provide bail bond services to customers. *Id.* ¶¶ 29–30. Rather, MCCs are used by Visa to "classify suppliers into market segments" and are "assigned based on the supplier's primary line of business." *Id.*, Ex. 3 at 2. Therefore, a merchant may provide services that, if performed by different companies, would fit into several MCCs, and Visa's rules account for that situation. *See id.*, Ex. 2 at 2 (Visa rule stating that "[i]f the Merchant sells several products or services, the MCC that best describes the majority of the sales must be assigned.").

GPN contends that Cook County's RFQ required all of the bidders to be

12

merchants providing bail bond services. The RFQ requested a percentage rate that each bidder would charge for "[p]ayments to post bail where the Contractor is required to be the merchant." *Id.*, Ex. 6 at 49. In addition, the RFQ included a provision allowing the bidders to submit questions and ask for clarification. *Id.*, Ex. 6 at 4. Cook County answered some of those questions in ways that indicated that each bidder would be required to act as a merchant when processing bail bond payments:

> 9. Will the County accept bids from non-merchants for provision of bail payment services?
>
> **Answer:** No. Per the [RFQ], the credit card processor for bail payment services must be the merchant.
>
> . . .
>
> 31. . . .
>
> c. If Visa's requirements do not allow the charging of a percentage fee for processing payments (other than tax payments), does the County's request for a rate for processing bail payments mean that the County does not intend to accept Visa?
>
> **Answer:** No, the County, intends to accept all major credit cards. For bail payment transactions, the vendor must be the merchant and will be limited to charging the percentage fee it bid.
>
> d. What does County mean by the phrase "where the Contractor is required to be the merchant"? Does it mean, "merchant" as used for credit card processing purposes?
>
> **Answer:** Yes.

*Id.*, Ex. 7 at 3, 7. The County's RFQ and the answers it provided to questions reflect that the County expected the winning bidder to act as the merchant when processing bail bond credit card payments.

As discussed above, however, there is no basis to believe that VitalChek cannot

act as a merchant when processing bail bond payments.  Cook County stated that it was using the term merchant "as used for credit card processing purposes."  *Id.* at 7. Visa rules define a merchant as "[a]n entity that contracts with [a bank that processes credit card payments] to originate Transactions and that is eligible to display a Visa-Owned Mark."  *Id.*, Ex. 1 at 1177.  Even if, as GPN contends, VitalChek must offer the same services as GPN to qualify as a merchant who can charge a percentage fee to customers, GPN does not allege that VitalChek cannot begin to do so.  Accordingly, after taking into account the uncontested fact that VitalChek could begin to offer bail bond services to customers, GPN has not plausibly alleged that VitalChek made a false statement when it submitted a bid that implied that it could charge a percentage fee to customers and act as the merchant when processing bail bond payments.

GPN alleges in its amended complaint that, at the time the second bids were submitted, "VitalChek did not . . . intend to provide cardholders paying bond with any bona fide bond payment services."  *Id.* ¶ 71.  Of course, VitalChek has not yet begun to perform its contract with the County, so it is unclear whether it will fail to provide bail bond services or act as a merchant for bail bond transactions.  More importantly, "promissory fraud, i.e., a false statement of intent regarding future conduct rather than present or past facts, is generally not actionable under Illinois law unless the plaintiff also proves that the act was part of a scheme to defraud."  *Trade Fin. Partners., LLC v. AAR Corp.*, 573 F.3d 401, 413 (7th Cir. 2009) (fraud claimed failed when plaintiff had not alleged a scheme to defraud or any misrepresentations apart from an unfulfilled promise); *see Avery v. State Farm Mut. Auto. Ins.*, 216 Ill. 2d 100, 169, 835 N.E.2d 801,

14

844 (2005) (holding that breach of contract could not be basis for ICFA claim because "[w]e believe that a deceptive act or practice involves more than the mere fact that a defendant promised something and then failed to do it. That type of misrepresentation occurs every time a defendant breaches a contract." (internal quotation marks omitted)). A scheme to defraud requires that the fraud be "particularly egregious or, . . . [be] embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." *J.H. Desnick v. Am. Broadcasting Cos.*, 44 F.3d 1345, 1354 (7th Cir. 1995).

GPN does not argue that VitalChek's implied promises in its bid were part of a scheme to defraud, and it does not allege other misstatements sufficient to suggest a scheme to defraud. *See Ass'n Benefit Servs., Inc. v. AdvancePCS Holding Corp.*, No. 04 C 3271, 2004 WL 2101928, at *2 (N.D. Ill. Sept. 21, 2004) (in a case where defendant repeatedly promised to pay a certain commission and then reneged, scheme to defraud requirement can be satisfied by "a series of unfulfilled promises"). GPN claims that VitalChek made several other false statements to Cook County beyond the bid itself, but the exhibits GPN cites disprove its assertions. GPN claims that Piefke, VitalChek's vice president, falsely represented to County employees that VitalChek was certified to process bail bond payments even though no such certification existed. The letter GPN cites, however, does not say that. It states:

> This will confirm our conversation today concerning cash bail payments. This will further confirm that we can process cash bail payments as part of our integrated solution. We currently process these types of payments, for example, at the Maryland District Courts (Integrated solution for all District Courts in the State of Maryland) and Davidson County (Nashville) Tennessee. As part of the implementation process, we will work with your court personnel to work out specific steps to most conveniently integrate

15

these payments into your current system.  Further, the PCI Certification documents we sent to you relate to all of our card processing activities.

Def. Ex. 3; *see* 1st Am. Compl. ¶ 56.  Although the letter mentions both bail bond

payments and PCI DSS certification, it contradicts GPN's allegations that VitalChek

deceptively suggested that its PCI certification has any sort of special relationship to the

bail bond payment process.  Indeed, the letter states that the certification applies to all

of its card processing activities.  Although GPN alleges that this letter was sent in

response to a question from Cook County regarding whether VitalChek was certified

specifically for bail bond payments, the letter does not state that VitalChek is so

certified.  Rather, the letter states that VitalChek can process bail bond payments, and,

as discussed above, there is no basis to believe this statement is untrue.

Similarly, GPN claims that in January 2012, Piefke sent two e-mails to Cook

County employees that included PCI DSS certification documents and falsely implied

that these documents related to bail bond payments. 1st Am. Compl. ¶ 75.  But neither

of the e-mails mentions bond payment processing at all.  *Id.*, Ex. 14.  Further, the first of

the two e-mails explains what the PCI standards are and reflects that they are unrelated

to bail bond payments.  *Id.* at 1, 5–7.  The e-mail states that PCI standards are

separate from the regulations of card associations such as Visa and that the standards

concern security.  *Id.* at 5.  The e-mail continues by listing the six requirements of PCI

certification:  "Build and maintain a secure network," "[P]rotect cardholder data,"

"Maintain a vulnerability management program," "Implement strong access control

measures," "Regularly monitor and test networks," and "Maintain an information security

policy."  *Id.* at 5–6.  Piefke's e-mail makes clear that PCI certification relates to security,

16

and it does not suggest that it has anything to do with bail bond payments.

GPN also alleges that VitalChek told Cook County that it would act as a merchant of record for all credit card processing that it handled for the County. *Id.* ¶ 73 & Ex. 13. GPN acknowledges that VitalChek could serve as a merchant of record on at least some transactions. It argues, however, that VitalChek's blanket statement was false because VitalChek did not address specifically whether it could act as the merchant for bail bond transactions, whether it could provide bail bond services to customers, or whether it could charge a percentage convenience fee and still comply with Visa rules. As discussed above, however, GPN does not allege that VitalChek is unable to provide the same services that GPN currently provides. As a result, VitalChek would be able to act as the merchant for bail bond transactions and charge a percentage fee by providing the same services that GPN provides. Accordingly, VitalChek's statement that it could act as a merchant of record is not false.

Finally, GPN alleges that beyond the alleged misstatements to Cook County, VitalChek makes similar misstatements in connection with other contracts with government entities and promotional material sent to those entities. GPN provides one concrete example, a page from VitalChek's website on which it states that it can "[i]mprove[ ] payment processing and reduce[ ] agency processing fees by acting as the merchant and handling all credit card fees and charge backs." *Id.*, Ex. 15 at 1. This statement is not false, because GPN concedes that VitalChek can act as a merchant in some instances. *Id.* ¶ 73. Rather, GPN argues only that VitalChek cannot act as a merchant in bail bond cases, which are not mentioned on the page of the website that GPN cites. Further, as discussed above, GPN does not dispute that VitalChek could

17

offer services similar to what GPN offers and thereby act as a merchant for bail bond payments.

GPN also alleges "on information and belief" that VitalChek misrepresents its ability to act as a merchant in bail bond transactions in its contracts with other government entities and in its promotional materials. *Id.* ¶¶ 85–86. Generally, however, a plaintiff cannot comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be plead with particularity, by alleging facts on information and belief. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442–43 (7th Cir. 2011); *see Gros v. Midland Credit Mgmt.*, 525 F. Supp. 2d 1019, 1029 (N.D. Ill. 2007) (applying heightened pleading standard to fraud-based ICFA claims); *Int'l Star Registry v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 990 n.10 (N.D. Ill. 2006) (applying Rule 9(b) to DTPA claim to the extent it alleged fraud). A plaintiff may plead based upon information and belief in a case involving Rule 9(b) only if "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions." *Pirelli Armstrong Tire*, 631 F.3d at 443 (internal quotation marks omitted). GPN offers no grounds for its suspicions, except that it asserts that compliance with credit card association rules, including Visa's, is a standard term in government credit card processing contracts. 1st Am. Compl. ¶ 85. This asserted ground does not render GPN's information and belief allegations "plausible," and thus it cannot support GPN's state law claims. *Pirelli Armstrong Tire*, 631 F.3d at 443 (emphasis omitted).

For these reasons, the Court dismisses GPN's three state law claims.

**Conclusion**

For the reasons stated above, the Court grants VitalChek's motion to dismiss [docket no. 61].  The Court terminates Cook County's motion to stay [docket no. 58] without prejudice.  The case remains set for a status hearing on May 31, 2012 at 9:30 a.m.

 

s/ Matthew F. Kennelly<br>
MATTHEW F. KENNELLY<br>
United States District Judge

Date:  May 29, 2012